UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID M.,[1] | ) |
| | ) No. 20 CV 5352 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| KILOLO KIJAKAZI, Commissioner of Social Security, | ) |
| | ) |
| | ) August 19, 2022 |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

David M. seeks supplemental security income ("SSI") asserting he is disabled by scoliosis, chronic fatigue syndrome ("CFS"), sleep apnea, postural tachycardia symptoms ("POTS"), vasovagal syndrome, hypertension, depression, adjustment disorder, and anxiety. David filed his initial SSI application in July 2010, alleging disability onset in December 2002, which the Commissioner denied, and the Appeals Council declined to review. Thereafter, David sought judicial review and the court remanded the case for further proceedings. *See David M. v. Colvin*, No. 13 CV 156, 2014 WL 5543896 (N.D. Ill. Nov. 3, 2014); (Administrative Record ("A.R.") 1323-44). On remand the Commissioner denied David's application, and on judicial review the court again remanded the case. *See David M. v. Berryhill*, No. 16 CV 8827, Dkt. No. 21 (N.D. Ill. Sept. 11, 2017); (A.R. 1393-1406). On second remand, the Commissioner again denied David's application, and he then filed this suit seeking judicial review,

---

[1] Pursuant to Internal Operating Procedure 22, the court uses only the first name and last initial of Plaintiff in this opinion to protect his privacy to the extent possible.

*see* 28 U.S.C. § 636(c), with both parties consenting to the court's jurisdiction, (R. 15). Before the court are the parties' cross motions for summary judgment. For the following reasons, David's motion is denied, and the government's motion is granted:

## Background

This is the third time David's application for SSI benefits has come before the court. Because the relevant procedural history, background facts, and medical evidence are set forth in the previous remand decisions, they are not repeated at length here. To summarize, after conducting a hearing in November 2011, an Administrative Law Judge ("ALJ") determined that David suffers from certain severe impairments. (A.R. 19-31, 1323, 1333.) The ALJ denied David's application for benefits in December 2011, and in November 2014 the court remanded the case so that the ALJ could "evaluate [his CFS] diagnosis" in accordance with the applicable regulation. (Id. at 19-31, 1323-44.) The court found that the ALJ "misread . . . evidence regarding [David's] CFS diagnosis" and "fail[ed] to evaluate the relevant laboratory and mental signs present in the record," as required by the regulation. (Id. at 1339.) The court rejected David's remaining arguments, including that the ALJ erred by improperly weighing a treating physician's opinion, concluding that David's testimony was not fully credible, relying on a vocational expert's ("VE") testimony, and allegedly mishandling an exhibit file. (Id. at 1339-44.)

On remand the same ALJ conducted a new hearing in April 2015, during which David and a VE testified. (Id. at 1394-95.) The ALJ issued a decision in July 2015 concluding that David is not entitled to SSI. (Id. at 1394, 1438-62.) The court found

2

that the ALJ erred by failing to explain how she accounted for David's concentration, persistence, or pace ("CPP") limitations in the residual functional capacity ("RFC") assessment. (Id. at 1404-06.) The court instructed the ALJ on remand to "revisit her analysis of [David's CPP] limitations . . . and [to] solicit additional testimony to the extent necessary for resolving this issue." (Id. at 1405-06.) The court rejected David's other arguments, including that the ALJ erred at step three by finding that David's impairments were not of listings-level severity, assessing his subjective symptom statements, and weighing medical opinion evidence. (Id. at 1397-1404.)

A different ALJ considered David's application for benefits on the second remand. (R. 18, Pl.'s Mem. at 1 n.1; see also A.R. 1472-1503.) The ALJ conducted a hearing in July 2019, and a medical expert ("ME"), David, and a VE testified. (A.R. 1212-82, 1472.) Based on his review of the record, the ME testified as to David's medically determinable impairments. (Id. at 1212-35.) He also submitted a medical interrogatory indicating that David could: sit for eight hours, stand for six hours, and walk for five hours in a workday; walk six blocks; continuously lift 10 pounds and occasionally lift 21 to 50 pounds; and frequently carry 11-20 pounds and occasionally carry 21 to 50 pounds. (Id. at 1496, 2267-68.) The ME further opined that David could frequently reach overhead, feel, push/pull, climb stairs and ramps, balance, stoop, kneel, crouch, and crawl but only occasionally climb ladders or scaffolds and never work at unprotected heights. (Id. at 2269-71.) The ME added that David had "good muscle strength," "good [range of motion] of joints," and "[n]o neurological defect" in exams. (Id. at 2268, 2270, 2272.)

3

David testified that he received an associate degree at a local college, with the assistance of special education plans and accommodations, and was certified as a veterinary assistant. (Id. at 1236, 1238.) He participated in an internship in which the veterinary clinic permitted him to work half days every other day to accommodate his fatigue. (Id. at 1236-37.) Since his internship, he has not tried to find a job.[2] (Id. at 1253.) He said his fatigue, dizziness, and lightheadedness make it "hard to concentrate," "impair [his] memory at times," and cause difficulty with functioning. (Id. at 1238, 1241, 1243, 1246.) He naps about three to four hours daily. (Id. at 1241.) In high school he had frequent absences resulting from his impairments. (Id. at 1250.) He suffers from depression and anxiety, and his primary care provider prescribes medications for these impairments. (Id. at 1246 (testifying that he is not being treated by a mental health provider because of insurance issues).) In terms of daily activities, David walks his dog, uses his computer, naps, drives, and shops at a nearby store. (Id. at 1247-50.)

A VE testified that David has no past relevant work. (Id. at 1501.) The ALJ posed hypotheticals to the VE regarding whether someone with a specific RFC and David's age, education, and past jobs could perform work in the national economy. (Id. at 1271.) One hypothetical concerned an individual with an RFC for sedentary work and the following limitations: no climbing of ladders, ropes, or scaffolds;

---

[2] The Seventh Circuit recently affirmed the denial of a claimant's application for disability benefits where she had not sought employment, noting that should she "try to work but find herself unable, nothing will prevent her from applying anew for benefits." *Albert v. Kijakazi*, 34 F.4th 611, 613, 617 (7th Cir. 2022).

4

occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; no exposure to hazards of unprotected heights or moving dangerous machinery; and no extreme heat or humid environments. (Id. at 1271-72.) The VE testified that a person with such an RFC could perform jobs in significant numbers in the national economy, such as sorter, order taker, or document preparer. (Id. at 1272.) A second hypothetical involved the same RFC with the added limitations that the individual "would be able to learn, understand, remember and carry out simple work instructions" in a work environment with "routine" and "repetitive work, with no more than occasional changes in the work tasks." (Id. at 1272-73.) The ALJ noted that "[w]ith these abilities and limitations, the individual would be adequately able to sustain any necessary [CPP] in two[-]hour increments throughout the day." (Id. at 1273.) The VE responded that there would be no change in the jobs available. (Id.)

Engaging the standard five-step sequence, *see* 20 C.F.R. § 404.1520(a)(4), the ALJ determined at step one that David had not engaged in substantial gainful activity since his application in July 2010, (A.R. 1474). At step two the ALJ found that David has severe impairments of scoliosis, CFS, sleep apnea, POTS, vasovagal syndrome, hypertension, depression, adjustment disorder, and anxiety. (Id. at 1475.) At step three the ALJ determined that none of David's impairments was of listings-level severity. (Id. at 1480.) The ALJ also considered the "paragraph B" criteria and found that David has moderate limitations in understanding, remembering, or applying information, concentrating, persisting, or maintaining pace, and adapting

5

or managing oneself, and a mild limitation in interacting with others. (Id. at 1482-83.)

The ALJ then determined that David retained the RFC to perform sedentary work with the following limitations: no climbing of ladders, ropes, or scaffolds; occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling; no working near unprotected heights or in extreme heat or humidity; no moving dangerous machinery; and learning, understanding, remembering, and carrying out only simple work instructions in a work environment involving routine, repetitive work with no more than occasional changes in work tasks. (Id. at 1484.) With this RFC, the ALJ found that David "could maintain necessary [CPP] in two[-]hour increments throughout the workday." (Id.) At steps four and five, the ALJ found that David had no past relevant work but could perform jobs existing in significant numbers in the national economy, such as sorter, order taker, and document preparer. (Id. at 1501-02.) Accordingly, the ALJ concluded that David is not entitled to SSI benefits. (Id. at 1472-1503.)

**Analysis**

David's first appeal to the court resulted in remand because the ALJ omitted CFS from his impairments and failed to consider CFS symptoms under the applicable regulation. On remand the ALJ considered David's CFS at each required stage of the analytical process. David's second appeal to this court similarly resulted in remand, but for a different reason. The ALJ did not adequately explain how she accounted for David's CPP limitations. (A.R. 1404-06). David alleges that, on second remand, the

6

new ALJ repeated the prior ALJ's error by crafting an RFC that again failed to account for his CPP limitations. (R. 18, Pl.'s Mem. at 9-14.) David also contends that the new ALJ improperly weighed the medical opinion evidence, (id. at 14-15)—an argument he previously raised and which the court rejected, (A.R. 1403-04).

When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and whether the decision has the support of substantial evidence. *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted). This is a deferential standard that precludes the court from reweighing the evidence or substituting its judgment for that of the ALJ's, allowing reversal "only if the record compels a contrary result." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted).

Furthermore, because the court has already issued rulings in this case, the law of the case doctrine applies. *See Key v. Sullivan*, 925 F.2d 1056, 1060 (7th Cir. 1991); *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998) ("The law of the case doctrine . . . is applicable to judicial review of administrative decisions."). The doctrine requires that "once an appellate court either expressly or by necessary implication decides an issue, the decision will be binding upon all subsequent proceedings in the same case." *Key*, 925 F.2d at 1060. "This consistency protects parties from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on

judicial action by minimizing the possibility of inconsistent decisions." *Id.* (internal quotations and citations omitted). Exceptions to the law of the case doctrine may arise when substantial new evidence is introduced after judicial review, or the reviewing court is convinced that the decision of the first was clearly erroneous. *Id.* (citations omitted).

**A.  CPP**

In David's second appeal, the court ordered a remand because the ALJ failed to explain how she accounted for David's CPP limitations in her RFC. (A.R. 1404-06). Specifically, the ALJ did not support the RFC assessment with "a physician's translation of [David's] moderate [CPP] difficulties . . . [or] build a logical bridge from the evidence" to the RFC. (Id. at 1405). The court instructed the ALJ on remand to "revisit her analysis of [David's CPP] limitations and solicit additional testimony to the extent necessary for resolving this issue." (Id. at 1405-06). David now argues that the new ALJ who reviewed his claim on remand likewise failed to properly account for his CPP limitations in the RFC. (R. 18, Pl.'s Mem. at 9-14.) He asserts that substantial evidence shows he would not be able to stay on task to complete requirements for full-time work. (Id. at 9-10.)

As the court previously noted, whether RFC restrictions to simple, routine, repetitive tasks adequately capture moderate CPP limitations has become fertile ground for litigation, likely because the caselaw governing this issue is context- and case-specific. *See Regina P. v. Saul*, No. 19 CV 3155, 2020 WL 4349888, at *8 (N.D. Ill. July 29, 2020). The Seventh Circuit has made clear that both the hypothetical

8

posed to the VE and the RFC assessment must account for even moderate limitations in CPP, but also has insisted there "is no magic words requirement" for how to do so correctly. *Id.; see also Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). Thus, the ALJ is required to engage in an individualized evaluation of the claimant's limitations without falling back on a one-size-fits-all approach. *See Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020); *Bruno v. Saul*, 817 Fed. Appx. 238, 242 (7th Cir. 2020).

Here, the ALJ supported with substantial evidence the moderate CPP limitations she assessed and included specific functional limitations in her RFC to account for them. (See A.R. 1481-84, 1496-1501.) In discussing the "paragraph B" criteria at step three, the ALJ assessed moderate CPP limitations. (Id. at 1483.) In so finding, she considered David's reports that his sleep disorder causes fatigue and lethargy, impairs his memory, and limits his ability to complete tasks and concentrate. (Id. at 1481 (citing id. at 146, 151, 194).) The ALJ also indicated that David's anxiety results in secondary effects of distractibility and poor concentration. (Id. at 1483 (citing id. at 958).) At the same time, the ALJ determined that "the record does not reflect a marked" CPP limitation because his concentration and attention generally were noted as being "normal." (Id. at 1482-83.) The ALJ noted that in his August 2010 function report David said he has a "good attention span," (id. (citing id. at 151)), which his mother echoed in her function report from the same period, (id. (citing id. at 175).) Mental evaluations also revealed that David's memory is intact, his intelligence is above average, and his attention span and concentration are

9

normal. (Id. at 1482 (citing id. at 729, 973).) And despite David's reports of "brain fog," (id. (citing id. at 751, 1064, 2077)), the ALJ found that he was able to follow instructions and, with special accommodations, achieve good grades and earn an associate degree, (id. at 1481-83).

In formulating her RFC, the ALJ also discussed David's psychiatrist's May 2010 opinion that David's CPP restrictions were marked. (Id. at 1497 (citing id. at 515).) The ALJ noted that the opinion preceded the disability application date and conflicted with state agency psychologist Dr. Kirk Boyenga's September 2010 opinion. (Id.) The record considered in prior appeals did not include Dr. Boyenga's entire opinion, including his opinion that David "is capable of performing simple tasks" and "routine, repetitive tasks." (Id. at 2279.) The ALJ cited this narrative explanation to support the nonexertional limitations she assessed. (Id. at 1497.) While the state agency psychologists, including Dr. Boyenga, submitted opinions "very early" in the initial and reconsideration stages, the ALJ found the record consistent with such opinions, which supported no more than moderate CPP limitations, especially in light of more recent neurology records indicating "normal attention span and concentration." (Id. at 1497-2000.) The ALJ indicated that she accounted for moderate CPP limitations in the RFC by precluding David from "perform[ing] any detailed or complex tasks, as well as avoiding more than occasional changes, all in the context of a limited range of sedentary work." (Id. at 1499; see also id. at 1500 ("[P]erforming simple tasks, along with routine and repetitive tasks, accommodate[s] [David's] mental functioning, including due to fatigue and the resulting difficulties in

10

[CPP].").)  In short, the ALJ conducted an individualized evaluation of David's limitations, supported by citations to functional reports, medical records, and state agency psychologists' opinions, to build a logical bridge from the evidence to her RFC determination.  Her analysis has the support of substantial evidence.

But David disagrees, arguing that the ALJ improperly assessed his CPP limitations and failed to account for them in her RFC.  (R. 18, Pl.'s Mem. at 9-14.)  As to David's argument that the ALJ erred at step three in assessing the severity of his CPP limitations, David advanced a similar argument in his second appeal, which the court rejected, finding that "the record does not support that he is as limited as he alleges."  (A.R. 1400).  Under the law of the case doctrine, the court's prior decision on this issue is binding.  *Key*, 925 F.2d at 1060.  In any event, David's argument invites the court to reweigh the evidence or substitute its judgment for that of the ALJ's, which the court is not permitted to do.  *See Deborah M.*, 994 F.3d at 788.

David further asserts that the ALJ used "even more vague" and conclusory language in her RFC to address his CPP limitations, including by suggesting he could maintain CPP in two-hour increments throughout the workday.  (R. 18, Pl.'s Mem. at 11.)  The court disagrees.  After assessing David's RFC, the ALJ noted that "with these abilities and limitations, the claimant could maintain necessary [CPP] in two[-]hour increments throughout the day."  (A.R. 1484.)  The ALJ based this language on her discussion with the VE about a typical workday for an unskilled worker. Specifically, the ALJ asked the VE whether such an individual would work two hours and have a break, work two more hours and have a lunch, work two more hours and

11

have a break, and then end the workday two hours later—and the VE responded affirmatively. (Id. at 1277.) David did not challenge the VE's testimony during the hearing, nor does he develop his argument as to how such language amounts to reversible error. (R. 18, Pl.'s Mem. at 11-12.) Merely arguing that this language is "utterly uninformative," (id. at 11), is not enough for the court to order a remand on this issue. Where, as here, the ALJ performed a detailed analysis of David's CPP limitations and their effects on his ability to work and sufficiently explained how her RFC accounted for those restrictions, substantial evidence supports her RFC assessment. *See DuCharme v. Kijakazi*, ___ Fed.4th ___, No. 20 CV 356, 2022 WL 3287974, at *2 (7th Cir. Aug. 11, 2022) (affirming where ALJ supported RFC with "thorough" analysis of medical records and medical opinion evidence).

**B.     Medical Opinions**

David argues that the new ALJ erred in her analysis of the medical opinion evidence.[3] Here, David repeats arguments regarding the ALJ's evaluations of treating source opinions, (R. 18, Pl.'s Mem. at 14-15), which the court addressed and rejected in previous orders, (A.R. 1339-41, 1403). The court's last remand was limited to the ALJ's analysis of David's CPP limitations. (A.R. 1404-06). Insofar as David raises the same treating source arguments again here, the court disregards them

---

[3] In 2017 the SSA adopted new rules for agency review of disability claims involving the treating physician rule. *See* 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5844 (Jan. 18, 2017). Because the new rules apply only to disability applications filed on or after March 27, 2017, they are not applicable in this case. *Id.*

12

because he has not pointed to any new evidence that would lead the court to change its previous determinations. *See Key*, 925 F.2d at 1060.

David also argues that the ALJ offered no "meaningful or cogent" evaluation of the ME's testimony or interrogatory responses and challenges the ALJ's failure to assign specific weight to such testimony and responses. (R. 18, Pl.'s Mem. at 14.) The ME testified at the hearing that David's impairments did not meet listings-level severity and that he was capable of light work, but the ME was not able to review all records before that proceeding. (A.R. 1212-35); *see also Wilder v. Kijakazi*, 22 F.4th 644, 653 (7th Cir. 2022) (noting that ALJs "*may* ask for and consider evidence from [MEs] . . . about the [claimant's] impairment(s), such as the nature and severity of the impairment(s)," particularly to determine whether listings-level severity has been met) (internal quotations and citation omitted) (emphasis in original). As a result, the ALJ asked the ME to return a medical interrogatory, which he did, opining that David could perform light work with postural and environmental limitations and providing narrative responses citing objective evidence supporting his conclusions. (A.R. 1496, 2267-71.) The ME did not opine as to mental impairments or nonexertional limitations, and David concedes that the ME "has no expertise in psychiatry or mental functioning." (R. 18, Pl.'s Mem. at 14.) In her decision the ALJ described the ME's testimony and interrogatory responses. (A.R. 1494-96.)

David challenges the ALJ's consideration of the ME's testimony and interrogatory responses, but his argument fails for several reasons. First, while the ALJ reviewed David's entire record—and invited an ME to provide testimony and

13

interrogatory responses—the court's second remand order was limited to ensuring a proper analysis and accounting of CPP limitations in David's RFC. (Id. at 1393-1406). Opening the door to unrelated challenges at this point—without a showing by David as to how the ALJ's evaluation of the ME's testimony or interrogatory responses undermines her RFC conclusion, especially as to CPP limitations—would flout the purpose of the law of the case doctrine, which is to "conserve[] judicial resources, and foster[] reliance on judicial action." *Key*, 925 F.2d at 1060 (internal quotations and citations omitted).

Second, the ALJ sufficiently addressed the ME's findings, and although she did not assign specific weight to the ME's opinions, she made clear that despite having evaluated "many medical opinions spanning an extensive period of time and from varying perspectives," including from the ME, it was her duty alone to determine David's RFC. (A.R. 1496); *see also DuCharme*, 2022 WL 3287974, at *2 ("[T]he determination of a claimant's RFC is a matter for the ALJ alone—not a treating or examining [or other] doctor—to decide.") (citation omitted). Pursuant to this duty, the ALJ evaluated David's "combination of impairments, mental and physical," and assessed his RFC. (A.R. 1496.) The ALJ supported her RFC with substantial evidence, as explained. Accordingly, any error by the ALJ in failing to assign specific weight to the ME's opinion is not prejudicial here, particularly because David did not develop any argument as to how he was harmed by the ALJ's evaluation of the ME's opinion, which did not reach mental impairments or nonexertional limitations. *See McKinzey v. Astrue*, 641 F.3d 884, 892 (7th Cir. 2011) ("[A]dministrative error

14

may be harmless: we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result."); *Hicks v. Colvin*, No. 13 CV 106, 2014 WL 3741352, at *3-4 (S.D. Ind. July 29, 2014) (noting claimant bears burden to show error is prejudicial).

Third, David did not cross examine the ME regarding his testimony or interrogatory responses, either at the hearing or pursuant to a supplemental hearing after receipt of the interrogatory answers. Had David done so, the ME could have responded to alleged shortcomings in his opinion. *See Coyier v. Saul*, 860 Fed. Appx. 426, 427-28 (7th Cir. 2021) (finding, in context of VE testimony, that claimant's failure to "develop an argument or question the VE further about his methodology" resulted in ALJ being able to rely on such testimony). Doing so now—on the third appeal of the case after a narrow remand unrelated to David's current argument—is simply too late.

## Conclusion

For the foregoing reasons, David's motion for summary judgment is denied, and the government's is granted.

ENTER:

_____
**Young B. Kim**
**United States Magistrate Judge**

15